UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JIMMIE T. MCGEE-EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:08CV00048 ERW |
| ) | |
| CHADRA HARTEGAN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion to Dismiss of Defendants Chadra Hartegan, Tracy Harrison, Debra Kelley, James Carter, Katherine Clifton, Thomas Dunn, Michelle Thompson, Tammy Lambert, Chantay Godert, Larry Crawford, Gary Davis, Lori Calvin, and Dale Lucas [doc. #30], and on Defendant Carrie Taylor's separate Motion to Dismiss [doc. #38].

## I. BACKGROUND FACTS[1]

At the time of the events at issue in this case, Plaintiff Jimmie McGee-El ("Plaintiff") was an inmate in the Northeast Correctional Center ("NECC") in Bowling Green, Missouri. Defendants to Plaintiff's § 1983 claims are current and former NECC employees.

In September of 2007, defendants and NECC corrections officers Gary Davis ("Davis") and Tammy Lambert ("Lambert") conducted a search of Plaintiff's cell. In the course of their search, Davis and Lambert discovered a crock pot and determined that it should be confiscated. Thereafter, Joel Clover ("Clover"), another corrections officer, approached Plaintiff about the

---

[1] For purposes of Defendants' Motions to Dismiss, the facts alleged by Plaintiff in his Complaint are taken as true.

results of the search. Clover informed Plaintiff that he could either give up ownership of the crock pot or receive a conduct violation for possessing it. Plaintiff refused to surrender the crock pot and received a conduct violation for possession of contraband.

Following a hearing on the conduct violation in the prison's Classification Office, Defendant Chadra Hartegan ("Hartegan"), an NECC disciplinary hearing officer, found Plaintiff guilty of the infraction, confiscated the crock pot, and placed Plaintiff on 20 days "Activity Restriction." Hartegan subsequently determined, however, that the violation would be expunged because the officer who had written the conduct violation – Clover – was not present at the search of Plaintiff's cell. Plaintiff asked Hartegan about the crock pot, and she told Plaintiff that he would need to speak to the Property department about it. Defendant James Carter ("Carter"), Hartegan's supervisor, then called Plaintiff into his office and emphatically told Plaintiff that he would not get his crock pot back, and that he should stop attempting to do so. Plaintiff did not stop, however, and several days later he filed Informal Resolution Requests ("IRRs") against Davis and Lambert, claiming that his crock pot was seized in violation of his due process rights.

Later that day, Hartegan called Plaintiff to her office and proceeded to question Plaintiff about where he had made copies of certain evidence he had attached to the IRRs. Plaintiff informed her that he had made the copies in the library, where inmates are permitted to do so. Hartegan then ordered him out of the room and informed him that she would see him later. Plaintiff later filed an IRR against Hartegan for "Abuse of Offender/Harassment" based on this exchange.

That evening, Harrison summoned Plaintiff to the prison library, where he formally received the conduct violation for theft as a result of using another inmate's personal copy card to make copies. Plaintiff alleges that Hartegan falsely claimed that she noticed some irregular

2

attachments when examining Plaintiff's IRRs against Lambert and Davis, which led her to investigate whether Plaintiff was entitled to make such copies in the prison library. She further contended that this investigation revealed that the library could not account for all of the copies that had been made, leading to a search of Plaintiff's cell that revealed the missing copies.

In a letter to Carter, Hartegan's supervisor, Plaintiff requested representation at the hearing on the violation, a request that Carter refused in a subsequent face-to-face conversation. When Plaintiff asked if he could have that in writing, Carter again refused and ordered Plaintiff out of his office. Plaintiff also had a conversation with Defendant Carrie Taylor ("Taylor"), a staff member in the Classification Office, regarding the IRR against Hartegan. Taylor informed Plaintiff that she found no grounds in his claims for a finding of impermissible retaliation. Taylor also told Plaintiff that if he wished to pursue his claim against Hartegan for Abuse of Offender/Harassment, he would need to write a letter to the grievance officer, Defendant Michelle Thompson ("Thompson"), in order to obtain the form, and Plaintiff later did so.

In addition to the letter to Thompson, Plaintiff wrote letters concerning the incident with Hartegan to the NECC Deputy Warden, Defendant Thomas Dunn ("Dunn), and the Director of the Missouri Department of Corrections, Defendant Larry Crawford ("Crawford"). The only response Plaintiff received was a letter from the NECC Assistant Warden, Defendant Chantay Godert ("Godert"), who stated that she found no evidence of impropriety on the part of Hartegan.

Several days after his conversation with Taylor, Plaintiff received notice to report to the Classification Office, and when he arrived, Defendant Debra Kelley ("Kelley") informed him that he was there for the disciplinary hearing on his conduct violation for theft. Kelley refused Plaintiff's request of staff representation and rejected his arguments that he had insufficient notice of the charges, insufficient notice of the evidence against him, and that there were technical

deficiencies in the body of the conduct violation. Kelly also allegedly refused to credit the statements on his behalf that Plaintiff offered from witnesses. Upon reviewing the evidence, Kelley concluded that Plaintiff had used another inmate's copy card – with that inmate's permission, but against prison regulations – to make the allegedly stolen copies, and therefore modified the initial charge and found him guilty of possessing contraband.

As a result of that guilty finding, Plaintiff had a hearing with the Administrative Segregation Committee, chaired by Defendant Katherine Clifton ("Clifton"), Defendant Lori Calvin ("Calvin"), and Defendant Dale Lucas ("Lucas"). Clifton, Calvin, and Lucas proceeded with the hearing although Plaintiff informed them that he had not received the required 24-hour notice. They determined that Plaintiff would be assigned to 30 days in Administrative Segregation.

Plaintiff subsequently wrote another letter to Deputy Warden Dunn, this time concerning the disciplinary hearing and the guilty finding on the conduct violation. Dunn responded that he found no improprieties, but that other staff members would be reviewing the violation. Although Plaintiff wished to file an official grievance, he was unable to meet with Thompson, the grievance officer, while he was in Administrative Segregation, and he likewise did not receive the grievance form he requested from her until after his disciplinary assignment had begun.

## II. PROCEDURAL BACKGROUND

In its Order dated November 24, 2008 [doc. #6], the Court dismissed Plaintiff's § 1983 claims against the named defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) because the Court concluded that they were legally frivolous or failed to state claims upon which relief can be

granted.[2]  The Court subsequently reconsidered that Order, finding that it had overlooked Plaintiff's allegations that Defendants retaliated against him for his use of the prison grievance system in violation of his First Amendment rights [doc. #9].  Thus, in ruling on these Motions to Dismiss, the Court only considers whether Plaintiff has stated viable First Amendment retaliation claims.

**III.    LEGAL STANDARD**

A complaint should be dismissed for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume that all material facts alleged in the complaint are true.  *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999) (*quoting Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)).  "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal."  *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002).  Additionally, the allegations in the complaint must be viewed "in the light most favorable to the plaintiff."  *Casazza*, 313 F.3d at 418 (*citing Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995)).  Finally, dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some

---

[2] The referenced statutory provision permits courts to dismiss a claim filed *in forma pauperis* "at any time," and irrespective of whether the filing fee has been paid, if the court determines that the claim is "frivolous or malicious", "fails to state a claim upon which relief can be granted", or "seeks monetary relief against a defendant who is immune from such relief."

insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal citations omitted).

## IV. DISCUSSION

Defendants contend that they are entitled to dismissal of Plaintiff's claims because Plaintiff has failed to adequately allege claims against them under § 1983. Plaintiff argues that he has stated First Amendment retaliation claims against all defendants.

A plaintiff asserting a First Amendment retaliation claim must prove the following elements: (1) the exercise of a constitutionally-protected right by the plaintiff; (2) an adverse action against the plaintiff by the defendant; and (3) a causal connection between the two. *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 878 (8th Cir. 2005). In order to be sufficient to support such a claim, the adverse action must be of the type that would chill an individual of ordinary firmness from exercising the right at issue. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). The adverse action does not need to be independently improper, however, as otherwise proper conduct becomes actionable when it is the result of a retaliatory motive. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). For all claims asserting individual liability under § 1983, the plaintiff must allege that there was a "causal link to, and direct responsibility for, the alleged deprivation of rights"; § 1983 does not permit respondeat superior liability. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

In the prison context, an inmate subjected to discipline in retaliation for use of the prison grievance system may bring a § 1983 action for the violation of his First Amendment rights. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1994). This is because the First Amendment right to petition for redress of grievances includes access for prisoners to a prison's established grievance procedures. *Id.* A prison official can successfully defend against a retaliation claim

based on an allegedly false disciplinary charge, however, by showing that there was "some evidence" that the inmate actually committed the rule violation. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

If the prisoner was found guilty of a conduct violation by an impartial decisionmaker, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation." *Id.* at 831. In other words, because a disciplinary hearing does not occur without a prison employee first filing a conduct violation, a finding of guilt by an impartial decisionmaker on an allegedly false report precludes a retaliation claim under § 1983. *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). Additionally, as long as the "some evidence" standard is satisfied, it is irrelevant whether the conduct violation was later expunged. *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006).

### A. *Plaintiff's Claims against Hartegan and Harrison*

The Court concludes that Plaintiff has not stated viable retaliation claims against Hartegan and Harrison for their filing of an allegedly false conduct violation because the allegations in his Complaint reveal that he was found guilty of possessing contraband by an impartial decisionmaker. *See Henderson*, 29 F.3d at 469. Kelley presided over the disciplinary hearing and determined that Plaintiff had possessed contraband in violation of prison regulations. Plaintiff has not alleged that Kelley was biased, only that she failed to follow the proper procedures for disciplinary hearings in violation of his Fourteenth Amendment due process rights. Furthermore, Kelley's adjustment of the violation from theft to possession of contraband undermines any claim that she was biased; if that were the case, she would have simply found Plaintiff guilty of theft as

alleged. *Cf. Moots*, 453 F.3d at 1023 ("some evidence" standard still satisfied if violation later expunged).

In short, because there is "some evidence" that Plaintiff committed the claimed violation from the face of Plaintiff's Complaint – the initial filing of the conduct violation, corroborated by the finding of guilt by a decisionmaker not alleged to be biased – Plaintiff's claim that the charge was falsified is precluded. *Hartsfield*, 511 F.3d at 829. Hartegan and Harrison are therefore entitled to dismissal of Plaintiff's § 1983 claims against them.

### B. *Plaintiff's Claims against Taylor, Thompson, Lambert, and Davis*

At the outset, the Court notes that the factual bases for Plaintiff's claims against these defendants are not entirely clear. To the extent Plaintiff claims that the retaliatory action was the filing of the conduct violation, the Court finds that Plaintiff has not stated valid claims because these defendants were not involved in that action. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (individual liability under § 1983 requires a "causal link to, and direct responsibility for, the alleged deprivation of rights"). Although Plaintiff has also sued these individuals in their official capacities, he has not alleged the existence of an official custom or policy that brought about the constitutional violation, which is a prerequisite to official liability. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, the Court must determine whether Plaintiff has stated valid retaliation claims against these Defendants based on other individual conduct.

Plaintiff's claim against Taylor appears to be based on her finding, in response to the IRR Plaintiff filed against Hartegan, that Hartegan had not impermissibly retaliated against Plaintiff. The Court concludes that Plaintiff cannot state a retaliation claim based solely on an adverse ruling in the grievance procedure. "Adverse action" for purposes of First Amendment retaliation claims must be such that it would chill a person of ordinary firmness from exercising the right at

issue, *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007), and the Court finds that an adverse decision on a grievance, without more, would not provide that chilling effect. If that were the case, inmates would be able to state viable retaliation claims against hearing officers based on every adverse ruling throughout the different stages of the grievance procedure. The Court therefore concludes that Taylor is entitled to dismissal of Plaintiff's retaliation claim.

As for Thompson, Plaintiff alleges that he did not receive the requested grievance forms from her until after he was placed in Administrative Segregation, and that he was also unable to meet with her during that time. There is no suggestion in Plaintiff's Complaint, or elsewhere, that any of these actions were motivated by retaliatory animus; instead, it appears that the timing of her responses was merely inconvenient to Plaintiff because he was already in Administrative Segregation when she responded. As such, Plaintiff has not stated a valid retaliation claim against Thompson.

That leaves Lambert and Davis, the corrections officers who Plaintiff alleges improperly seized Plaintiff's crock pot. Plaintiff filed IRRs against both Lambert and Davis, but he does not allege any conduct on their parts that occurred after his complaints. Plaintiff's retaliation claim against them therefore must be dismissed due to his failure to allege any retaliatory conduct.

In short, the Court finds that Plaintiff's retaliation claims against Taylor, Thompson, Lambert, and Davis will be dismissed because Plaintiff has not alleged that they engaged in retaliatory conduct against him.

### C. *Plaintiff's Claims against Kelley, Carter, Clifton, Calvin, Lucas, Crawford, Dunn, and Godert*

As with the claims discussed above in Section IV.B, to the extent Plaintiff could state retaliation claims against these individuals, the claims must be based on retaliatory actions apart

9

from the filing of the allegedly false incident report, as none of these defendants was personally involved in that incident. *Madewell*, 909 F.2d at 1208. Plaintiff has likewise not asserted that these defendants were responsible for an unconstitutional custom or policy, and official liability is therefore not an option. *Hafer*, 502 U.S. at 25. As such, the Court must again consider whether any of Plaintiff's other factual allegations are sufficient to state retaliation claims.

Plaintiff alleges that Kelley, the official who conducted the hearing on the theft / contraband charge, denied him legal representation in the disciplinary hearing, failed to properly consider the witness statements Plaintiff offered on his behalf, and in general did not follow the prescribed hearing procedures. As noted above, however, Plaintiff's claim that Kelley retaliated against him is severely undermined by her modification of the theft charge after she examined the evidence. Moreover, Plaintiff does not contend that the exercise of his right to petition for redress of grievances brought about these decisions; Plaintiff claims that Kelley was "visibly disturbed" and "clearly agitated" by Plaintiff's explanations of the "technical deficiencies" in the body of the conduct violation and by Plaintiff's claims that Hartegan and Harrison had falsified the charge. At no point does Plaintiff allege that Kelley had any knowledge of his pending IRR against Hartegan. The Court therefore concludes that Kelley is entitled to dismissal of Plaintiff's claim due to Plaintiff's failure to allege a causal connection between Kelley's conduct and Plaintiff's filing of grievances. *See Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 878 (8th Cir. 2005) (causal connection required for First Amendment retaliation claim).

Plaintiff's claims against Carter, Hartegan's supervisor, also fail due to inadequate allegations of a causal connection. Plaintiff claims that Carter, Hartegan's supervisor, denied him

representation in the disciplinary hearing on the conduct violation.[3] Plaintiff does allege that Carter, unlike Kelley, was aware of Plaintiff's resort to the grievance procedures with respect to the crock pot seizure, and more specifically that Carter angrily responded to Plaintiff's complaints and requests regarding that incident. Plaintiff's allegations do not indicate, however, that there was any connection between Carter's refusal of representation on October 3 for the disciplinary hearing on the theft charge related to his use of the library copy machine, and Carter's statements to Plaintiff on September 28 concerning Plaintiff's attempts to retrieve his crock pot. The Court therefore concludes that Carter is entitled to dismissal of Plaintiff's retaliation claim.

Plaintiff claims that Clifton, Calvin, and Lucas – the members of the Administrative Segregation Committee – placed him in Administrative Segregation as a result of the contraband violation and failed to give him proper notice of the hearing. He does not contend, however, that these actions were in response to his use of the grievance procedures, or even that these defendants were aware of his grievances. Clifton, Calvin, and Lucas are therefore entitled to dismissal because, as with the defendants discussed previously in this Section, Plaintiff has not alleged that their claimed adverse actions were in retaliation for Plaintiff's use of the grievance procedure.

As for Dunn, Crawford, and Godert, Plaintiff states that they failed to address his complaints despite repeated letters from him regarding the prison staff and the resolution of his grievances, but his allegations do not indicate that they ignored his complaints due to his exercise of his First Amendment rights. Furthermore, Plaintiff's claim that they were wholly unresponsive to his complaints fails, as he admits that he received letters from Dunn and Godert stating that

---

[3] Prison inmates do not have any independent constitutional right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974).

they believed that Hartegan had not done anything impermissible. Assuming for the sake of argument that these actions could be considered "adverse" for purposes of a retaliation claim, the Court still concludes that Plaintiff has not stated a claim against these defendants because there is no allegation that retaliatory animus brought about their actions.

In sum, the Court finds that Plaintiff's claims against Kelley, Carter, Clifton, Calvin, Lucas, Crawford, Dunn, and Godert will be dismissed because Plaintiff has not alleged that their adverse actions were in response to his resort to the prison grievance system.

## V. CONCLUSION

The Court finds that all Defendants are entitled to dismissal of Plaintiff's First Amendment retaliation claims. Plaintiff cannot bring a § 1983 claim for retaliation against Hartegan and Harrison based on the filing of the disciplinary charge for theft because he was found guilty of the violation by an impartial decisionmaker. Plaintiff's claims against Taylor, Thompson, Lambert, and Davis fail because he has not alleged that they engaged in the adverse conduct required for a retaliation claim. Although Plaintiff did arguably allege such conduct with respect to Kelley, Carter, Clifton, Calvin, Lucas, Crawford, Dunn, and Godert, these defendants are likewise entitled to dismissal because Plaintiff failed to allege the required causal connection between the exercise of the constitutional right and the subsequent retaliation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [docs. ##30, 38] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for an Order Compelling Discovery [doc. #47] is **DENIED** as moot.

Dated this 9th Day of October, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE